MATTS et ux. v. BORBA.

No. 15,381; June 26, 1894.

37 Pac. 159.

**Slander—Imputing Unchastity.—In an Action for Slander, for** calling plaintiff "valhaca," plaintiff and several witnesses (all illiterate Portuguese) testified that the word was in common use among the Portuguese, and meant "whore." Defendant's witnesses, some of whom were educated Portuguese, testified that the term "valhaca" did not mean "unchastity," but that it meant "knave, rogue, crafty," and that the word "puta" was in common use, meaning "whore." Held, sufficient to support a verdict that defendant intended to impute unchastity to plaintiff.

**Slander—Evidence.—After Defendant had Examined his wit-** nesses, and rested, plaintiff gave evidence that the word "valhaca" meant "whore." Held, that, if the evidence was improperly admitted, defendant was not prejudiced, there being already sufficient evidence to support the verdict.

**Trial—Remarks of Counsel.—It was Agreed That the Cause** should be submitted without argument, but plaintiff's attorney said: "I want to make this statement to the jury: That plaintiffs, having commenced this case in the superior court, cannot recover any costs unless they recover $300 damages." And the court said, "You must not make those statements." Held, that, if defendant thought the court had not sufficiently informed the jury not to consider the remarks, he should have asked for an instruction to that effect, and that a new trial would not be granted on account of such remarks.

APPEAL from Superior Court, Santa Clara County; W. G. Lorigan, Judge.

Action by Frank Matts and wife against Joseph Borba. From a judgment for plaintiffs, and an order denying a new trial, defendant appeals. Affirmed.

Wm. L. Gill for appellant; W. B. Hardy for respondents.

HAYNES, C.—Action for slander. The plaintiffs had judgment, and this appeal is from the judgment and from an order denying defendant's motion for a new trial. The parties plaintiff and defendant are Portuguese, and the slanderous words are charged to have been spoken of and

concerning the plaintiff, Catherine Matts, in the Portuguese language, in the presence and hearing of persons who understood that language, to wit: " 'Valhaca! quando e que es méus homes foram enhar bariga de carne a tua casa.' Plaintiffs aver that said words signify, and are understood to mean, in the English language, 'You whore! when my men went and filled their bellies with meat at your house,' and the said Portuguese words were so understood by the said persons in whose presence and hearing they were spoken; that the defendant meant by said words so spoken to impute to the plaintiff Catherine Matts a want of chastity." The answer denied speaking the said words, or any of them, or any other words meaning to impute a want of chastity, or that said words, or any of them, signify, or are understood to mean, "you whore," or "whore," or were so understood by any person who heard them. Both the plaintiffs and several other witnesses testified to the speaking by defendant of the Portuguese words set out in the complaint, and that the word "valhaca" has the meaning attributed to it in the complaint, some of the witnesses defining it to mean a "private whore; that is, a married woman who is doing it on the sly"; that "the word is in common use among the Portuguese to express a woman who has fallen so low as to be common with everyone, even without pay"; while the defendant and about the same number of witnesses, testified that the words charged were not spoken. All the witnesses in chief on the part of the plaintiff were illiterate, and, with the exception of Mrs. Matts, could not read or write, and she only to a limited extent. The defendant, in addition to the witnesses who were present, and who testified, as positively as witnesses can to a negative fact, that the words were not spoken, called six intelligent Portuguese, two or three of whom had received a collegiate education in Portugal, who testified that " 'valhaca' means 'knave, rogue, rascal, scamp, scapegrace, crafty, cunning' "; that it never means "unchastity"; that they never heard it used to impute unchastity; that the word in common use, having the meaning of the English word "whore," is "puta"; and that "meretriz" and "prostituta" are also used to express the same meaning.

Appellant, in his statement on motion for a new trial, specified as one of the grounds thereof that the evidence was

insufficient to justify the verdict as to the meaning of the words alleged to have been spoken. Respondents contend that this ground cannot be considered, for the reason that it was not included in appellant's notice of intention to move for a new trial. The only clause in the notice which could possibly authorize the specification in question is the following: "Third. Insufficiency of the evidence to justify the decisions and rulings of the court, and that said rulings and decisions are against law." It is difficult to determine what was meant by this statement as a ground of motion for a new trial, nor do I think it necessary to determine it, as it will not affect our conclusions. That there was a conflict in the evidence as to whether the defendant spoke the Portuguese words charged in the complaint is beyond question, even if we add to the evidence upon this point the additional fact that Mrs. Matts, upon a former trial, based upon the occurrences which took place at the time the words are alleged to have been spoken, testified to different language used by defendant, to which she made the same response she now testifies she made to the language stated in the complaint, and in which she applied to defendant's wife the epithet "puta" to express the same meaning that was given by plaintiff's witnesses to the word "valhaca." Similar doubts may be expressed as to the meaning intended to be conveyed by the word "valhaca"; but doubts upon these questions of fact would neither justify the court below in setting aside the verdict of the jury, nor this court in reversing the order denying a new trial. Appellant insists, however, that the testimony of his witnesses as to the meaning of the word "valhaca" leaves no doubt; that, in effect, it is wholly uncontradicted. As to the primary meaning of the word, this is true. Standing alone, as a single word, it does not imply want of chastity, but, like many words in the English language, no definition of which, as found in the dictionaries, refer to chastity, or the want of it, are nevertheless used to imply a want of chastity. There are other words, however, corresponding very closely to the word "valhaca," which, in their ordinary use, do not refer to the subject of chastity, but yet imply qualities which embrace chastity. The word "dishonest," for example, corresponds very nearly, in its primary meaning, to the word "valhaca." The first definition given by Webster is: "Wanting in honesty; void of integrity;

faithless; fraudulent; disposed to deceive or cheat," while the third meaning given is "dishonorable; disgraceful; shameful; wanton; unchaste." So Shakespeare used the word "honest" to denote chastity: "Wives may be merry, and yet honest too." Even the word "occupy" was formerly used to express sexual intercourse, though now never so used. That the word "valhaca" is capable, without greatly distorting some of the definitions given to it, of expressing the imputed meaning, is reasonably clear, and the evidence in this regard is sufficient to support the verdict.

It is also specified by appellant that the court erred in giving the first and second instructions requested by the plaintiffs. It is sufficient to say of these instructions that, if they had been the only instructions given, they were too general to be of much aid to the jury. But the court, in other instructions given of its own motion, fully and very fairly instructed the jury that they must, in order to warrant a verdict against the defendant, not only find that the words charged were spoken by the defendant, but that they have a meaning imputing, and were intended to impute to Mrs. Matts, a want of chastity; that it was not sufficient to find that they were insolent and reviling or opprobrious, but that they had the meaning charged in the complaint; and that, in ascertaining the meaning of the speaker, reference must be had to the words used, and the circumstances under which they were spoken. These and other expressions used by the court must be taken with the more general statements in the instructions excepted to, there being no real inconsistency between them.

Plaintiffs offered in evidence a lease of the land where they resided, and where the alleged slanderous words were spoken. The lease was made to the husband, and had not expired. The difficulty arose from a new tenant going upon the premises with several teams, hauling lumber to erect a barn, one of the teams being driven by defendant, between whom and the plaintiffs ill-feelings existed. Objection was made to the introduction of the lease, and, to the ruling of the court permitting its introduction, defendant excepted. We see no ground upon which it can be said that defendant was prejudiced, even if it be conceded that the evidence was immaterial.

After the defendant had examined his witnesses, and rested, the plaintiffs called several witnesses, who were permitted,

against defendant's objection, to testify that the word "valhaca" meant "whore." The objection was that it was testimony in chief, and not in rebuttal. This evidence might have been properly received in chief, and indeed was of the same character, and given by witnesses having no better qualifications as to learning than those first examined. Appellant contends that the court erred in overruling his objections, no reason being given why they were not called in chief, and cites several cases in support of his contention. These cases were all where the testimony offered in rebuttal was in fact evidence in chief, and was excluded by the court, and the exclusion was sustained upon appeal. In this case, if the evidence offered in rebuttal had been excluded upon the ground urged by appellant, we see no reason why such ruling would not have been affirmed, for the same reason that the action of the court in receiving it should be affirmed. In Lux v. Haggin, 69 Cal. 414, 10 Pac. 674, it was said: "All agree that it is within the discretion of the trial court to admit additional evidence in support of the plaintiff's case after the defendant has rested. Of course, it is always safer to admit evidence claimed to be in reply, if the court entertains doubts of its admissibility." Section 2042, Code of Civil Procedure, is as follows: "The order of proof must be regulated by the sound discretion of the court. Ordinarily, the party beginning the case must exhaust his evidence." And subdivision 3 of section 607 provides: "The parties may then respectively offer rebutting evidence only, unless the court, for good reason, in furtherance of justice, permit them to offer evidence upon their original case." Defendant's witnesses having testified to the meaning of the word as given in the dictionaries, and its primary meaning as used by educated people, it would have been competent for plaintiffs to rebut by showing that a secondary or corrupted meaning had been given it. If the evidence ostensibly introduced in rebuttal proved not to be properly of that character, the defendant still had recourse to a motion to strike out, when the court, with the evidence before it, could more accurately determine its character. The record does not show the ground upon which it was received; that is, whether it was regarded as properly in rebuttal, or whether the court, in the exercise of its discretion, and in the furtherance of justice, permitted the plaintiffs to strengthen

their case by the admission of original testimony; nor do we think it necessary that it should appear. Upon the point in question there was already sufficient evidence to have supported the verdict, and hence we cannot say that the defendant was prejudiced, or that upon a new trial the evidence given by these witnesses could be disproved.

Upon the conclusion of the evidence, it was agreed that the cause be submitted to the jury without argument; that thereupon the attorney for the plaintiffs arose, and said to the jury: "I do not care to argue this case, but I want to make this statement to the jury: That, plaintiffs having commenced this case in the superior court, they cannot recover any costs unless they recover three hundred dollars damages." Defendant's counsel said: "I object to that statement." The Court: "You must not make those statements." No request was made of the court to instruct the jury to disregard the statement of counsel, nor was any exception taken. The conduct of plaintiffs' counsel in this regard was highly improper, but it was at once met by a prompt and decided rebuke from the court. This the court no doubt considered sufficient to inform the jury that they must not be influenced by it. If defendant thought it not sufficient, he should have requested the court to give such instruction as he deemed proper, and, upon a refusal, to have taken an exception. Conceding that the verdict was for a sum suspiciously near the line ($305), we cannot say that the improper remarks of counsel in fact influenced the jury. Such irregularities can usually be dealt with by the trial court so as to protect parties against injury, and in proper cases afford relief by granting a new trial. We do not think the court erred in refusing to grant a new trial upon this, nor upon any of the grounds assigned. We advise that the judgment and order appealed from be affirmed.

We concur: Searls, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

DE HAVEN, J.—I concur in the judgment.